340 So.2d 1379 (1976)
STATE of Louisiana
v.
Leonard ERVIN.
No. 58406.
Supreme Court of Louisiana.
December 13, 1976.
Jake Shapiro, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, III, Dist. Atty., Jack Pierce Brook, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Leonard Ervin, was tried and convicted of the offense of simple burglary, and sentenced to serve nine years at hard labor. La.R.S. 14:62. On appeal, he relies upon one assignment of error.
In the early morning hours of October 11, 1975, Susan McCullough was awakened by a noise in her house, and armed with a small caliber pistol, went to investigate. In the darkened living room, she saw a man stooped over her stereo. When she attempted *1380 to shoot at him, the gun misfired, and the frightened intruder fled from the house. She summoned the police and described the intruder to them as a black male, approximately five feet, four inches tall and weighing around 130 pounds. The record reveals that defendant is approximately five feet, nine inches tall and weighs over 150 pounds.
Ms. McCullough testified at trial that she had seen the man several days before this incident when he opened her front door claiming to have heard someone invite him in, then departed at her request. It is unclear whether she communicated this information to the police during their initial investigation.
Later in the morning of October 11, Ms. McCullough saw defendant at a commercial establishment across the street from her house. Believing him to be the man who had come to her door and later broken into her home, she learned his name and address from neighbors and gave them to the police. Defendant was subsequently arrested for the simple burglary of Ms. McCullough's residence.
At trial, defendant presented an alibi defense: his sole witness, Laney Mae Speed, testified that defendant had spent the night of the burglary with her.
On cross-examination, Ms. Speed testified that she had known defendant since 1972. When asked how frequently she saw him between 1972 and 1975, she responded, "almost every day." At this point the prosecuting attorney requested that the jury be removed from the courtroom. When this was done, he informed the court that the witness could not have seen defendant on a daily basis since 1972 because he had been incarcerated in Angola State Penitentiary from October, 1973 until September, 1974. The court advised Ms. Speed of the penalties for committing perjury and instructed the prosecutor to resubmit his questions to her. She then answered that she had visited defendant only three times during his incarceration at Angola, but explained that she had understood the question to ask how often she saw defendant when he was at home in Alexandria.
Defense counsel agreed that the matter should be clarified before the jury but argued that reference to defendant's previous incarceration at Angola would be inadmissible. The trial judge held a different view:
"He is impeaching her testimony and you are allowed to impeach on this basis under the circumstance we're under. I don't think the issue should be brought to extensive amount, but you [the prosecutor] can ask her where she visited him and I will allow that."
The jury was returned to the courtroom. In response to the prosecutor's question, Ms. Speed admitted that her earlier statement had been incorrect and that she had in fact seen defendant only three times between October, 1973 and September, 1974. She was then asked, "And where did you see him?" Defense counsel promptly interrupted with an objection, asserting that this had no bearing upon the matter and was unnecessary to impeach her prior testimony. The court overruled the objection whereupon defense counsel again objected that the information sought was irrelevant, but the court adhered to its ruling and instructed Ms. Speed to answer the question. She replied that she had seen defendant "at Angola," and defense counsel once more noted his objection.
Defendant contends that the trial court erred in ruling the reference to Angola admissible because it alluded to another crime committed by defendant which was not relevant to the impeachment of the witness.
The State urges that defendant has not properly preserved the issue for review. Louisiana Code of Criminal Procedure articles 770 and 771 provide for a mistrial or admonition to the jury when a remark or comment made during trial refers directly or indirectly to other crimes committed by a defendant as to which evidence is not admissible; however, the failure to make the required motion is considered a waiver of the error. La.C.Cr.P. art. 770, Official Revision Comment (b); State v. Pearson, 336 *1381 So.2d 833 (La.1976). On the basis of this authority and in the absence of a motion for a mistrial or request for an admonition, the State maintains that the issue is not reviewable.
Defendant argues persuasively that Louisiana Code of Criminal Procedure articles 770 and 771 are inapplicable here. Those articles provide corrective measures where an unheralded prejudicial remark has crept into the proceedings. We have strictly adhered to the rule requiring prompt action by a defense counsel in such circumstances to prevent his gambling upon a favorable verdict and then, upon defendant's conviction, resorting to appeal on errors which either could have been corrected at the time or should have put an immediate halt to the proceedings. State v. Smith, 339 So.2d 829 (La.1976). In the instance case, defense counsel made every reasonable effort to prevent the introduction of the statement complained of in advance of its utterance. The trial judge was fully aware of the nature of the statement before he allowed it to be presented to the jury. Defendant's assignment of error relates not merely to the prejudicial remark but to the trial court's ruling which adjudged the prejudicial reference proper prior to its actual utterance. A motion for a mistrial or request for an admonition after the remark was entered would clearly have been a vain and useless act, and under the circumstances we find that none was required.[*]
The trial judge ruled that the State's inquiry as to where Ms. Speed visited defendant was a permissible exercise of its right to impeach her testimony. Generally, the State may impeach the testimony and credibility of defense witnesses as to all relevant matters, La.R.S. 15:486 and 15:494; however, where the inquiry bears upon an accused's past criminal record, relevancy is not the sole limiting criterion. Regard must also be had for the substantial risk of prejudice to the defendant which might result from adverting to his prior misdeeds. The danger inherent in admitting evidence of prior crimes is that the jury will convict a defendant solely because he has been shown to be a bad man:
"* * * The natural and inevitable tendency of the tribunalwhether judge or juryis to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. . . . These reasons of Auxiliary Policy . . ., directed to prevent the risks of reaching verdicts through insufficient evidence, have operated to exclude that which is in itself relevant." 1 Wigmore, Evidence, § 194 (3d ed. 1940).
To minimize the possibility of such prejudice to the defendant, our statutes and the jurisprudence interpreting them exclude evidence which tends only to show the bad character of the accused, except in rebuttal of the evidence introduced by him to show good character. La.R.S. 15:481. However, evidence of the defendant's prior crimes may be admitted when it has a relevancy independent of establishing his criminal disposition. See La.R.S. 15:446 (acts tending to establish knowledge, system or intent); La.R.S. 15:447 (offenses part of the res gestae); and La.R.S. 15:495 (impeachment of the defendant's credibility by evidence of conviction of crime).
These exceptions to the general rule of inadmissibility may not be exclusive. Conceivably, whenever the other crimes evidence is relevant for some other purpose than to show that the accused is a bad man and thus more likely to have committed the crime with which he is charged, the rule of *1382 exclusion is inapplicable, and the evidence is admissible if its probative value outweighs its possible prejudicial effect. McCormick on Evidence, § 190 (Cleary ed. 1972). See also, State v. Prieur, 277 So.2d 126 (La.1973) and State v. Moore, 278 So.2d 781 (La.1973).
In the instant case, the fact that Ms. Speed had visited defendant only three times over a period of a year was relevant to impeach her testimony that she had seen him almost daily. However, the witness' own admission that her previous testimony had been false and that she had in fact seen defendant only three times from October, 1973 to September, 1974, effectively impeached her credibility. Where she visited defendant on those three occasions, although logically relevant, was of limited permissible utility to the State. The statement that defendant had been "at Angola" carried the clear implication that he had been incarcerated in the penitentiary in connection with another offense. Because such information is highly prejudicial, was not admissible for any purpose provided by statute, and in this case had little probative value, we find that the trial judge abused his discretion in failing to exclude it.
For the foregoing reasons, defendant's conviction is reversed and the sentence imposed upon him is annulled and set aside. The case is remanded to the district court for a new trial.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[*] Furthermore, it should be noted that defense counsel may have been prevented by the court from fully articulating a motion for a mistrial when the following transpired:

"[DEFENSE ATTORNEY]: Your Honor, at this point, I want to enter a formal objection to the admission of that testimony or ask the court
"BY THE COURT: That objection is noted."
By its interruption of counsel, the court may have cut off a motion for a mistrial, although defendant's brief does not make such a claim.