STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2023 KA 0886

STATE OF LOUISIANA

VERSUS

REYHANE TYRONE McKNIGHT

JUL 2 4 2024

Judgment Rendered: _____

* * * * *

ON APPEAL FROM THE
TWENTY-SECOND JUDICIAL DISTRICT COURT, DIVISION I
IN AND FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA
DOCKET NUMBER 596307-1

HONORABLE REGINALD T. BADEAUX, III, JUDGE PRESIDING

* * * * *

Gwendolyn K. Brown
Louisiana Appellate Project
Baton Rouge, Louisiana

Attorney for Defendant-Appellant
Reyhane Tyrone McKnight

J. Collin Sims
District Attorney
Butch Wilson
Assistant District Attorney
Covington, Louisiana

Attorneys for Appellee
State of Louisiana

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

**GREENE, J.**

The State charged the defendant, Reyhane Tyrone McKnight, with armed robbery with a firearm (count I), a violation of La. R.S. 14:64 and 14:64.3, and possession of a firearm by a convicted felon (count II), a violation of La. R.S. 14:95.1.[1] The defendant pled not guilty. After a trial, the jury found the defendant guilty as charged.[2] The trial court denied his motion for new trial and his motion for post verdict judgment of acquittal. The State then filed a habitual offender bill of information as to count I, and the defendant denied the allegations therein. After a hearing, the trial court adjudicated the defendant a fourth-felony habitual offender and sentenced him to life imprisonment at hard labor, without the benefit of probation or suspension of sentence on count I. As to count II, the trial court sentenced the defendant to a concurrent sentence of 20 years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence and fined him $1,000.00.[3] The defendant now appeals, designating five assignments of error. For the following reasons, we affirm the convictions and habitual offender adjudication, vacate the sentence in part, vacate an order imposing a financial obligation, and remand with instructions.

### FACTS

On October 8, 2017, at approximately 9:35 p.m., Amber Macey was working alone at a Shell gas station in Slidell, Louisiana. While Ms. Macey was sitting behind the register, an individual wearing a mask and carrying a gun entered the store, walked up to her, and told her to give him the money or he would kill her. The perpetrator took all of the cash inside the register and left the store. Ms. Macey then locked the door and called 911.

Detective Timothy Crabtree with the St. Tammany Parish Sheriff's Office reviewed the store's surveillance footage and obtained a description of the suspect and his clothing,

---

[1] The bill of information identified the predicate conviction for count II as defendant's July 31, 2008 conviction for simple robbery, Docket No. 435984, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.

[2] The instant case involves a retrial. The defendant was initially found guilty as charged by a non-unanimous jury verdict. In light of *Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), the trial court granted the defendant's motion to vacate sentence and motion for arrest of judgment and then granted him a new trial.

[3] The defendant's fourth-felony habitual offender status is based on the following three prior convictions in the 22nd Judicial District Court: (1) an October 27, 2006 conviction for attempted distribution of a Schedule II controlled dangerous substance, Docket No. 417749; (2) an August 4, 2008 conviction for simple robbery, Docket No. 435984; and (3) a March 24, 2011 conviction for possession of a Schedule I controlled dangerous substance, Docket No. 496971.

2

which was determined to be a blue hoodie, black pants, American flag boxer shorts, and black Vans shoes. Detective Crabtree also observed a customer, later identified as Thaddeus Victor, who was in the store shortly before the robbery. When questioned by officers, Mr. Victor stated that after he left the store, he saw the defendant outside.

Using the information obtained from the surveillance footage and Mr. Victor's statement, Detective Crabtree obtained an arrest warrant for the defendant, as well as a search warrant for the house where he was residing at the time. Black Vans shoes and a firearm were recovered from the home and the defendant was wearing American flag boxer shorts when arrested, all of which matched the suspect's attire in the surveillance footage and corroborated Mr. Victor's statement.

## COMPETENCY TO TESTIFY

In his first assignment of error, the defendant argues the trial court erred by finding Thaddeus Victor competent to testify as a witness.[4] On February 25, 2019, before the original trial in this matter, the defendant raised Mr. Victor's competency to testify. The trial court held a competency hearing, determined that Mr. Victor was competent to testify, and proceeded to trial. Later, the defendant filed a combined motion to vacate sentence and motion for arrest of judgment pursuant to *Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020). The trial court granted the motions, vacated the sentence imposed, and granted the defendant a new trial.

The defendant's second trial began on September 26, 2022, during which the defendant did not re-urge the issue of Mr. Victor's competency before or during trial. He now seeks review of the trial court's ruling from the first trial on Mr. Victor's competency to testify.

Louisiana Code of Criminal Procedure article 857 provides that "[t]he effect of granting a new trial is to set aside the verdict or judgment and to permit retrial of the case with as little prejudice to either party as if it had never been tried." Official Revision

---

[4] In assignments of error numbers four and five, the defendant assigns error to the trial court's denial of his motions for new trial and post verdict judgment of acquittal. Other than a passing reference, the defendant failed to develop any argument in support of these assignments of error. A mere statement of an assigned error in brief without argument or citation of authority does not constitute briefing. *State v. Jarvis*, 2021-1181 (La. App. 1 Cir. 2/25/22), 340 So.3d 1137, 1141-42. This Court may consider as abandoned any assignment of error that has not been briefed. *See* Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4(B)(4). Accordingly, we consider these assignments of error abandoned.

3

Comment (a) to La. C.Cr.P. art. 857 clarifies that the article "continues the sound rule of Art[icle] 515 of the 1928 Code of Criminal Procedure, that the slate is wiped clean when a new trial is granted."

This concept that a new trial grants a defendant a "clean slate" is established. *See State v. Graham*, 375 So.2d 374 (La. 1979) (*per curiam*); *State v. Lee*, 346 So.2d 682, 684 (La. 1977). Consistent with this concept, when a new trial is granted, both the State and the defendant may seek to introduce new evidence not previously introduced at the defendant's first trial. *See Graham*, 375 So.2d at 374; *State v. Williams*, 2023-0137 (La. App. 1 Cir. 9/15/23), 2023 WL 6001101, *2 (unpublished), *writ denied*, 2023-01417 (La. 3/12/24), 381 So.3d 54. Further, at a new trial, either party may seek to limit evidence that was previously admitted at the first trial. *See Williams*, 2023 WL 6001101 at *3. As either party may seek to introduce new evidence in a second trial, it follows that certain pretrial evidentiary motions and rulings may be necessary. Further, when a new trial is granted, a court is not bound by a prior pre-trial ruling or judgment rendered in connection with the first trial. Thus, the second trial is a new and separate trial, not a later stage of the first trial. Therefore, the "law of the case" doctrine does not apply. *Williams*, 2023 WL 6001101 at *2.

Herein, after being granted a new trial, the defendant did not re-urge the issue of Mr. Victor's competency to testify. Accordingly, the defendant has failed to adequately preserve this issue for appeal. *See* La. C.Cr.P. art. 841; *Williams*, 2023 WL 6001101 at *3. This assignment of error is not reviewable on appeal.

### LIMITATION OF CROSS-EXAMINATION AND IMPEACHMENT

In his second assignment of error, the defendant argues the trial court abused its discretion and violated his constitutional right of confrontation by limiting his cross-examination of and prohibiting his impeachment of Mr. Victor.[5] In all criminal prosecutions, the accused is entitled to confront and cross examine the witnesses against him. *See* U.S.

---

[5] The defendant references his assignments of error numbers four and five in the subtitle of his argument regarding assignment of error number two and in a single sentence at the end of that argument. However, as similarly noted in footnote 4, a mere statement of an assigned error in brief without argument or citation of authority does not constitute briefing. *State v. Jarvis,* 340 So.3d at 1141-42. This Court may consider as abandoned any assignment of error that has not been briefed. *See* Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4(B)(4). The defendant failed to develop any argument in support of assignments of error four and five. Accordingly, we consider these assignments of error abandoned.

4

Const. amend. VI; La. Const. art. I, §16. Cross examination is the primary means by which to test the believability and truthfulness of testimony, and it provides an opportunity to impeach or discredit witnesses. *State v. Alexander*, 2021-1346 (La. App. 1 Cir. 7/13/22), 344 So.3d 705, 719-20, *writ denied*, 2022-01262 (La. 11/8/23), 373 So.3d 62.

A party may cross examine a witness on any matter relevant to any issue in the case, including credibility. La. C.E. art. 611(B). Generally, to attack a witness's credibility, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. *See* La. C.E. art. 607(C); *State v. Robinson*, 2001-0273 (La. 5/17/02), 817 So.2d 1131, 1135. One of the main methods of attack upon a witness's credibility is to show a defect in his capacity to observe, remember, or recount matters. Mental abnormality, either at the time of observing the facts or at the time of testifying, will be provable on cross examination or by extrinsic evidence, as bearing on credibility. *Robinson*, 817 So.2d at 1135.

In the instant case, the defendant sought to cross examine Mr. Victor at trial as to his mental capacity to correctly recount the events of October 8, 2017. Specifically, the defendant intended to impeach Mr. Victor through extrinsic evidence in the form of court minutes from Mr. Victor's own criminal proceedings, wherein he was declared incompetent to stand trial in 2010 and 2014. The State objected and noted the trial court had found Mr. Victor competent to testify before the first trial, which was different from competency to proceed in his own criminal case. The State further argued the defendant's sole purpose in questioning Mr. Victor as to his mental capacity was to embarrass him. The defendant then argued the evidence was admissible to show Mr. Victor's defect of capacity.

The trial court granted the State's objection, noting the State had pointed out in its opening statement that it had a witness who was intellectually disadvantaged, and "anybody [who] has seen Mr. Victor so far, of normal comprehension, would understand that he has to struggle to maintain focus, et cetera." The trial court further stated the evidence had no impeachment value, because Mr. Victor had not been convicted of the offenses in his criminal proceedings. The trial court then told the defendant he could question Mr. Victor as to his mental competency, after which the defendant objected to the trial court's ruling and proffered the exhibits.

5

On appeal, the defendant argues the trial court erred in limiting his cross examination of Mr. Victor and in denying him the opportunity to present the proffered extrinsic evidence, the court minutes from Mr. Victor's own criminal proceedings. He further claims the trial court prohibited him from asking any questions to challenge Mr. Victor's competency.

Based on the record before us, we find the trial court did not abuse its discretion in finding the extrinsic evidence inadmissible. As stated, a party may attack a witness's credibility to show a defect in capacity, either through cross examination or extrinsic evidence. *See* La. C.E. arts. 607(C) and (D)(1); *Robinson*, 817 So.2d at 1135. However, generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal. La. C.E. art. 609.1(B). Because Mr. Victor was not convicted of the offenses with which the defendant attempted to impeach his credibility, the evidence was inadmissible. Therefore, the trial court properly excluded the evidence.

Furthermore, we agree the defendant was allowed to cross examine Mr. Victor as to his mental competency. Contrary to the defendant's assertion, the trial court did not limit his cross examination of Mr. Victor; the trial court merely precluded him from introducing the extrinsic evidence of Mr. Victor's prior criminal proceedings as a means of impeachment. The trial court specifically noted the defendant could still ask questions regarding Mr. Victor's competency, such as his level of education. Nevertheless, after the defendant proffered the exhibits and resumed questioning, he did not ask any questions regarding Mr. Victor's mental competency. Therefore, we conclude the trial court did not limit the defendant's cross examination. This assignment of error is without merit.

## PROHIBITION OF IMPEACHMENT

In his third assignment of error, the defendant argues the trial court erred in prohibiting him from impeaching Detective Crabtree.[6]

---

[6] In prohibiting the defense from impeaching Detective Crabtree, the defendant argues the trial court further erred in denying his motion for new trial (assignment of error number four) and his motion for post-verdict judgment of acquittal (assignment of error number five). However, as previously noted, the defendant did not raise these issues before the trial court in either motion. A new basis for objection cannot be raised for the first time on appeal. La. C.Cr.P. art. 841; *Creel*, 2014 WL 7332121 at *4. Therefore, these assignments of error are not properly before this Court.

6

At trial, the defendant sought to cross examine Detective Crabtree regarding a statement Ms. Macey made to him during an interview. The defendant asked Detective Crabtree whether he recalled Ms. Macey stating an individual named Doug was acting suspicious, to which Detective Crabtree testified he did not remember. The defendant then attempted to impeach Detective Crabtree's testimony via the interview to show Ms. Macey identified a man named Doug and stated she could not rule him out as the perpetrator of the robbery. The State objected and argued the defendant was not trying to impeach Detective Crabtree but, rather, Ms. Macey, who had testified before Detective Crabtree. The trial court then granted the objection.

After a thorough review of the record, we find the defendant failed to adequately preserve this issue for appeal. To preserve the right to seek appellate review, a party must state an objection contemporaneously with the occurrence of an alleged error, as well as the grounds for that objection. *See* La. C.Cr.P. art. 841(A). Further, to preserve the right to appeal a trial court ruling that excludes evidence, a defendant must make the substance of the evidence known to the trial court. *See* La. C.E. art. 103(A)(2). Herein, after the trial court granted the State's objection, the defendant did not object to the trial court's ruling prohibiting his impeachment of Detective Crabtree, nor did he proffer the evidence at issue. Accordingly, the defendant has waived review of any alleged error due to his failure to contemporaneously object. *See State v. Lobato*, 603 So.2d 739, 748-49 (La. 1992); *State v. Daigle*, 2013-1588 (La. App. 1 Cir. 3/21/14), 2014 WL 1167137, *2 (unpublished). This assignment of error is not reviewable on appeal.

## PATENT ERROR

Pursuant to La. C.Cr.P. art. 920(2), this Court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. *State v. Anthony*, 2023-0117 (La. App. 1 Cir. 11/3/23), 378 So.3d 766, 775. After a careful review of the record, we have found three patent errors.

As to count I, armed robbery with a firearm, the trial court sentenced the defendant to life imprisonment at hard labor, without the benefit of probation or suspension of sentence, pursuant to the defendant's adjudication as a fourth-felony habitual offender. However, when the dangerous weapon used in the commission of an armed robbery is a

firearm, La. R.S. 14:64.3(A) requires that the trial court impose an additional consecutive sentence of five years at hard labor, without benefit of parole, probation, or suspension of sentence. A defendant convicted of armed robbery and sentenced under the Habitual Offender Law remains subject to the additional five-year penalty for using a firearm in an armed robbery. *See State v. King*, 2006-1903 (La. 10/16/07), 969 So.2d 1228, 1232; *State v. Bonit*, 2005-0795 (La. App. 1 Cir. 2/10/06), 928 So.2d 633, 642-43, *writ denied*, 2006-1211 (La. 3/16/07), 952 So.2d 688. In this case, the trial court did not further enhance the defendant's habitual offender sentence under La. R.S. 14:64.3, and, therefore, the defendant's sentence is illegally lenient. However, neither the defendant nor the State raised this issue on appeal, and this lack of enhancement is not prejudicial to the defendant. Therefore, we decline to correct this error. *See State v. Bunch*, 2012-0431 (La. App. 1 Cir. 2/22/13), 2013 WL 675542, *1, n.4 (unpublished), *writ denied*, 2013-0632 (La. 10/11/13), 123 So.3d 1217.

On count II, possession of a firearm by a convicted felon, the trial court imposed a mandatory fine of $1,000. *See* La. R.S. 14:95.1(B). And, at an earlier hearing, on the State's motion, and pursuant to La. C.Cr.P. art. 887, the trial court also ordered the defendant to pay $835.80 in costs incurred by the State for bringing an out-of-town witness to trial. However, before imposing the $1,000 fine and ordering the $835.80 cost payment, the trial court did not conduct a hearing under La. C.Cr.P. art. 875.1, which deals with the trial court's imposition of fines, fees, and restitution as part of sentencing. Louisiana Code of Criminal Procedure article 875.1(C) pertinently states:

> (1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. ...
>
> (2) The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.

Louisiana Code of Criminal Procedure article 875.1(B) defines "financial obligations" as "any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or

8

by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole."

In the instant case, the trial court did not conduct a hearing to determine whether the aggregate amount of all financial obligations (the $1,000 fine and $835.80 cost payment) would cause substantial financial hardship to the defendant or his dependents, nor did it waive judicial determination of such. Further, the defendant did not explicitly or implicitly waive his right to a hearing. While this requirement is relatively new, becoming effective August 1, 2022, La. C.Cr.P. art. 875.1 is clear that a trial court must conduct a hearing prior to imposing *any* fine, fee, cost, restitution, or other monetary obligation as part of the defendant's sentence. Because the trial court failed to comply with La. C.Cr.P. art. 875.1, we vacate the fine and cost payment imposed on the defendant and remand the case to the trial court for a hearing in compliance with La. C.Cr.P. art. 875.1 and for resentencing. *Accord State v. Tucker*, 2022-735 (La. App. 3 Cir. 5/31/23), 368 So.3d 187, 199-202; and *State v. Gant*, 54,837 (La. App. 2 Cir. 1/11/23), 354 So.3d 824, 832.

Finally, the trial court incorrectly advised the defendant that the time period for filing an application for post conviction relief was three years from the time his sentence becomes final.[7] However, a defendant generally has two years "after the judgment of conviction and sentence has become final" to seek post conviction relief. La. C.Cr.P. art. 930.8(A). Nevertheless, the trial court's failure to correctly advise the defendant of the prescriptive period has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. Further, there is no remedy for an individual defendant who is not told of the limitations period. Accordingly, we decline to remand for resentencing for this error. *See State v. LeBoeuf*, 2006-0153 (La. App. 1 Cir. 9/15/06), 943 So.2d 1134, 1142-43, *writ denied*, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La. C.Cr.P. art. 930.8 generally provides that no application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the

---

[7] While the minutes are silent, the transcript reflects the trial court advised the defendant of the three-year time period as noted. When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

9

judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922. *Id.* at 1143.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions and habitual offender adjudication. We affirm his sentence on count I. We affirm his sentence on count II insofar as it sentences him to a concurrent 20 year imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. We vacate his sentence on count II insofar as it included the imposition of a $1,000 fine without a hearing to determine if the fine would impose a substantial hardship. We also vacate the order requiring the defendant to pay $835.80 in costs to the State. We remand this matter to the trial court for a hearing in compliance with La. C.Cr.P. art. 875.1 and for resentencing on count II.

**CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE ON COUNT I AFFIRMED; SENTENCE ON COUNT II AFFIRMED IN PART, AND VACATED IN PART; FINANCIAL OBLIGATION IMPOSED PURSUANT TO LOUISIANA CODE OF CRIMINAL PROCEDURE ARTICLE 887 VACATED; REMANDED FOR HEARING IN COMPLIANCE WITH LOUISIANA CODE OF CRIMINAL PROCEDURE ARTICLE 875.1 AND FOR RESENTENCING AS TO COUNT II.**